1           IN THE UNITED STATES DISTRICT COURT

2           FOR THE SOUTHERN DISTRICT OF TEXAS

3                    MCALLEN DIVISION

4  UNITED STATES OF AMERICA    §   CASE NO. 7:19-CR-522-4
                               §   MCALLEN, TEXAS
5  VERSUS                      §   WEDNESDAY,
                               §   FEBRUARY 5, 2020
6  DANIEL J. GARCIA            §   3:01 P.M. TO 3:19 P.M.

7
                         MOTION HEARING
8
            BEFORE THE HONORABLE MICAELA ALVAREZ
9                 UNITED STATES DISTRICT JUDGE

10

11

12      APPEARANCES:              SEE NEXT PAGE

13      ELECTRONIC RECORDING OFFICER: XAVIER AVALOS

14

15

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21        JUDICIAL TRANSCRIBERS OF TEXAS, LLC
               935 ELDRIDGE ROAD, #144
22             SUGAR LAND, TEXAS 77478
                 Tel: 281-277-5325
23           www.judicialtranscribers.com

24
      Proceedings recorded by electronic sound recording;
25      transcript produced by transcription service.

```
 1                      APPEARANCES:

 2

 3  FOR THE PLAINTIFF:          US ATTORNEY'S OFFICE
                                Robert Lopez, Esq.
 4                              1701 W. Bus. Hwy. 83, Ste. 600
                                McAllen, TX  78501
 5                              956-618-8010

 6                              US DEPARTMENT OF JUSTICE
                                PUBLIC INTEGRITY SECTION
 7                              Peter M. Nothstein, Esq.
                                1400 New York Avenue, NW
 8                              12th Floor
                                Washington, DC  20005
 9                              202-510-1549

10

11  FOR THE DEFENDANT:          LOONEY & CONRAD, PC
                                Clay S. Conrad, Esq.
12                              11767 Katy Freeway, Ste. 740
                                Houston, TX  77079
13                              281-597-8818

14                              G. ALLEN RAMIREZ, ATTORNEY
                                AT LAW
15                              Gocha Allen Ramirez, Esq.
                                515 E. Second Street
16                              Rio Grande City, TX  78582
                                956-487-4585
17

18

19

20

21

22

23

24

25
```

1        MCALLEN, TEXAS; WEDNESDAY, FEBRUARY 5, 2020; 3:01 P.M.

2                THE COURT: Good afternoon. You may be seated.

3                This is Case No. 19-522 as to Daniel Garcia.

4                MR. LOPEZ: Good afternoon, Your Honor. Bobby

5   Lopez and Peter Nothstein on behalf of the Government.

6                MR. NOTHSTEIN: Good afternoon, Your Honor.

7                THE COURT: I'm sorry. The last name was what?

8                MR. NOTHSTEIN: Nothstein, Your Honor.

9                THE COURT: Okay.

10               MR. RAMIREZ: G. Allen Ramirez and Clay Conrad for

11  Mr. Garcia, Your Honor.

12               THE COURT: Okay. Thank you.

13               And Mr. Garcia is present.

14               All right. Mr. Garcia, you may step to Counsel's

15  Table with your counsel.

16               And I guess I really want to really hear from

17  counsel as to their thoughts. And I've gone through the

18  material the Government presented. Of course, there's a

19  motion regarding the potential conflict here, so I've gone

20  through what the Government has presented here.

21               I've considered the response filed on behalf of

22  Mr. Garcia. One of the matters brought up in the response

23  is that should the Court feel that conflict counsel is

24  necessary, the suggestion as to the same attorney appointed

25  to represent Mr. Villareal as to the potential conflict in

1  Houston, I will tell you that that idea I will not accept.
2  So --
3              MR. CONRAD:  Judge, Judge, can I --
4              THE COURT:  So just let me finish here.  Okay?
5              MR. CONRAD:  Okay.
6              THE COURT:  All right.  Because to the extent that
7  we are looking at a potential conflict -- and again,
8  conflict counsel is very distinct from counsel representing
9  an individual on a criminal case, and I understand that, but
10 I would want to -- if the Court decides to proceed that
11 route, I would want something who would look at this
12 separate and distinctly from any issue that may pertain to
13 Mr. Villareal here, and quite frankly I would think that if
14 there is a problem, that I would be compounding that problem
15 by appointing the same counsel to act as conflict counsel,
16 so it would take a lot to convince me otherwise, Mr. Conrad.
17             MR. CONRAD:  May I address that?
18             THE COURT:  You may.
19             MR. CONRAD:  The role of the conflict counsel in
20 Houston is not to represent Mr. Villareal.
21             THE COURT:  I understand that.
22             MR. CONRAD:  In fact, he hasn't spoken to
23 Mr. Villareal.
24             THE COURT:  I understand that.
25             MR. CONRAD:  And does not intend to.

1                  The exact same facts are at issue.
2                  THE COURT:  I understand.
3                  MR. CONRAD:  His only role is to advise the Court,
4    and so I don't see where there is any overlap.
5                  THE COURT:  But to advise the Court regarding
6    what?
7                  MR. CONRAD:  Regarding whether or not there is a
8    conflict.
9                  THE COURT:  Between --
10                 MR. CONRAD:  And whether or not --
11                 THE COURT:  Between whom?
12                 MR. CONRAD:  Pardon me?  Between --
13                 THE COURT:  A conflict between who?
14                 MR. CONRAD:  Between my firm.
15                 THE COURT:  And?
16                 MR. CONRAD:  And Mr. Villareal.
17                 THE COURT:  Because?
18                 MR. CONRAD:  Because we represent Mr. Garcia.
19                 THE COURT:  Precisely.
20                 MR. CONRAD:  It's the same issue and it's the same
21   facts.
22                 THE COURT:  Precisely, that is why I do not want
23   the same attorney in this matter.  That's why I want to look
24   at it with distinct interest in mind, and to the extent that
25   the Court in Houston had decided to have that individual

1  strictly advise the Court, this Court does not believe that
2  that changes the dynamics because he has to look at that
3  from the perspective of Defendant Villareal in that case.
4          The Court has no conflict, so it's not a matter of
5  advice to the Court about what is best for the Court.  It is
6  advice to the Court, if that's the role, about what is best
7  for Mr. Villareal and whether, you know, there is a conflict
8  or potential conflict there.
9          So even though that attorney may not speak to
10 Mr. Villareal, his responsibility -- at least the way this
11 Court sees it -- is to protect the interest of
12 Mr. Villareal.
13         So why would I appoint an attorney whose task is
14 to protect the interest of Mr. Villareal to represent
15 Mr. Garcia in this case because the alleged conflict here
16 arises from that triangle.
17         MR. CONRAD:  May I just see it slightly
18 differently.
19         THE COURT:  Yeah.
20         MR. CONRAD:  I see the Court's -- or lead counsel,
21 counsel's role as just protecting the integrity of the
22 Court.  And therefore --
23         THE COURT:  Oh, Mr. Conrad, I think you've been
24 practicing long enough to know that a conflict is never
25 about the integrity of the Court -- unless somebody is

1  alleging that the Court has some sort of personal interest
2  in a matter, but otherwise, it is always about protecting
3  the interest of the Defendant in the case.
4           All right.  So okay, so that's one part of it.  So
5  that part I'm moving aside.
6           The other part, I'm sort of coming at this
7  backwards instead of straight up.  The other part of this
8  is, of course -- and Mr. Garcia, you are present with us
9  obviously here this afternoon -- that the reason that the
10 Court -- and I've done it in the past and I'll do it as I
11 see necessary, but obviously the reason that the Court
12 appoints counsel as conflict counsel in a case is because
13 generally speaking, even well educated Defendants who are
14 not lawyers, do not necessarily -- and even sometimes even
15 those of us who are lawyers don't always understand the
16 intricacies of a potential conflict.
17          And so one of the reasons, at least from this
18 Court's perspective, is for the appointment of counsel is to
19 ensure that that Defendant is receiving a good, sound legal
20 analysis, not advice because it is not necessarily up to
21 that attorney to give advice to the Defendant, but whether
22 they should or should not request other counsel or should
23 fire their current counsel, but to give them a good analysis
24 of the legal issues that may be implicated.
25          Mr. Garcia, of course, you are an attorney in this

1  case and you have, you know, I don't know what volume of
2  your work is, but you have certainly been an attorney in
3  criminal matters for quite some at least, based on the
4  Court's, you know, observation of you in this courtroom.
5           So I don't know that conflict counsel for
6  Mr. Garcia would really do anything that Mr. Garcia himself
7  is not capable of doing.  Always, as I said, in a case where
8  I have a Defendant who is not an attorney, I think it's
9  important for him to receive some analysis separate and
10 aside from the attorney representing him.  So I'm not
11 necessarily sure that I'm inclined to appoint conflict
12 counsel for Mr. Garcia, in light of, you know, his standing
13 as an attorney in this Court.
14          If either side thinks that if I feel necessary to
15 proceed further on this matter, that that is necessary, I
16 will certainly hear from either side on that issue, and so
17 I'll start with you, Mr. Lopez.
18          MR. LOPEZ:  Your Honor, the only reason that at
19 least me personally in reviewing this case was one of the
20 reasons that I considered it is because this is a rather
21 unique situation because layered within the conflict is
22 Mr. Garcia's representation -- albeit for a limited period
23 of time -- of Mr. Villareal and then also the factual issues
24 surrounding certain activities that Mr. Garcia was alleged
25 to be involved in with Mr. Villareal.

1          And so we, in essence, have a little bit of a
2   conflict within a conflict, and so I know that's a little
3   bit nuance and that's the only reason that, at least, I saw
4   it as maybe an additional reason to have conflict counsel
5   appointed.
6          THE COURT: All right. Okay. Mr. Conrad, on your
7   part, if the Court believes that there is something to be
8   explored here, do you, on behalf of Mr. Garcia, think that
9   it is necessary to appoint conflict counsel for Mr. Garcia?
10         MR. CONRAD: I don't believe there's conflict,
11  Your Honor.
12         THE COURT: I know, but listen to my question.
13  That wasn't the question. I like my questions answered.
14         MR. CONRAD: Okay.
15         THE COURT: The question was: To the extent that
16  the Court believes it is necessary to explore this matter
17  further, do you believe it is necessary to appoint conflict
18  counsel?
19         MR. CONRAD: If the Court chooses to examine it
20  further, then I think it is.
21         THE COURT: Okay.
22         MR. CONRAD: Doesn't the role of conflict counsel
23  do an independent investigation of facts and I believe that
24  that is the most appropriate route, if the Court believes it
25  is necessary to explore this further.

1       THE COURT: Okay. And Mr. Garcia, generally I
2  don't necessarily consider the position of the actual
3  Defendant because, as I said, generally they are not
4  attorneys, but in this case you are an attorney, and so I
5  guess, Mr. Garcia, if there's anything you wish to say --
6  not on the question of whether there's a conflict at this
7  point in time, I'm not there yet. But on the issue of if I
8  think it is necessary to explore the issue further, on your
9  part do you feel like having a separate, distinct attorney
10 sort of give you an analysis here? Do you feel that that
11 would be beneficial?
12      And again, if you don't want to say anything on
13 the issue ad leave it to your lawyers, I'm fine with that,
14 as well.
15      But if you want to say anything on the issue, I
16 will also hear from you.
17      DEFENDANT GARCIA: Well, Your Honor, I don't know
18 that it would be beneficial, but I don't have any issues
19 with the Court -- or rather, if the Government feels that's
20 the way to go about handling this situation, I don't have
21 any issues with it (indiscernible).
22      THE COURT: All right. So I'll keep that mind.
23      So then we come to the real crux of this and that
24 is I have received and reviewed the Government's filing. It
25 is under seal. One part of that, you know, I feel that is

1  something that I can address factually because it comes from
2  your firm, Mr. Conrad, and that is the representation by you
3  that Mr. Garcia is, in fact, friends with Mr. Villareal and
4  that at least in that case was going to be serving, I guess,
5  as a witness in the case.  And that's not anything that
6  should be a surprise to either side because obviously it
7  came from them.
8          So that's one of the considerations that I have
9  before me here that goes -- and it's in and of itself, I
10 will tell you, unless I'm looking at this completely in
11 isolation, I would -- well, actually if I was looking at
12 this completely in isolation -- that is the fact that he is
13 a friend and may be a witness in that case as to character
14 -- although this doesn't necessarily say that.  But that, in
15 and of itself, I do not believe would be a basis for a
16 disqualification on your part.
17         So that -- but it is part of the overall picture
18 that is being painted for me here.  And your letter itself
19 doesn't say one way or the other whether this is a character
20 witness or a witness to anything else involving that case.
21         I can't tell from this letter what your thought
22 was, and I'm -- if you want to clarify that for me right
23 now, I'll consider it.  I'm not necessarily asking you to at
24 this point in time, and you may decide you don't ever want
25 to clarify that because that may go into your

1  attorney/client relationship with Mr. Villareal.
2          But I am letting you know that that is something
3  that the Court is considering in light of everything else
4  that is being presented to the Court, okay?
5          MR. CONRAD:  I can say that Mr. Garcia was there,
6  not just as a character witness, but also to testify as to
7  how Mr. Villareal lives his life in the community, which
8  goes slightly beyond character witness.
9          THE COURT:  Okay.
10         MR. CONRAD:  In that he does not live the life of
11 a drug dealer.
12         But it does not go into the facts of the case in
13 any way because that is not something Mr. Garcia has
14 personal knowledge of.
15         THE COURT:  Okay.  All right.  So then the other
16 question I have in this regard, the Government has provided
17 me with other material.  It is under seal right now.  I am
18 considering -- again, I haven't decided yet, but I will tell
19 you, Mr. Conrad, that I do believe that this matter does
20 warrant further inquiry based on what I have reviewed.
21         So the Court will be proceeding forward to an
22 analysis of whether or not there is a conflict here that
23 warrants your disqualification.  So I will be exploring it
24 further.
25         In that regard from the Government's perspective,

1  if I do appoint -- I may decide that based on what's
2  presented before me, that I can make that decision myself
3  without appointing counsel.  But if I do decide to appoint
4  conflict counsel, what is the Government's position
5  regarding the disclosure of this material for limited
6  purposes of counsel being aware of those additional facts.
7          And part of the Court's, I guess, determination in
8  that regard was that if I do appoint conflict counsel, and
9  if I do disclose this to conflict counsel, then how do we
10 deal with that, as far as that being communicated to
11 Mr. Garcia?  And of course, then Mr. Garcia has every right
12 to communicate with his lawyers.
13         So what is the Government's position?
14         MR. LOPEZ:  Your Honor, I think that that would be
15 very difficult.  I don't know if Mr. Nothstein has a
16 different position on that, but.
17         THE COURT:  Hopefully you have the same position.
18         MR. LOPEZ:  But in regards to that, you know,
19 those statements were made under the protection of a proffer
20 agreement.  Uniquely one of the things that I was going to
21 bring up is the Public Defenders have actually been assigned
22 to serve as conflict counsel for another individual,
23 Mr. Wadhwani (phonetic), in light of an attorney, Michael
24 Wynn's (phonetic), previous representation of Mr. Garcia,
25 actually in this matter.

1        So one of the things that the Government was going
2   to bring to the Court's attention, should the Court consider
3   appointing somebody in the Public Defender's Office, we
4   would likely run into the same problem that the Court was
5   alluding to with representing -- appointing the same person
6   to represent Mr. Garcia as Mr. Villareal.  So that's one
7   thing.
8               THE COURT:  Wait, wait.  So the Public Defender's
9   Office has been appointed to represent?
10              MR. LOPEZ:  To serve as conflict counsel for
11  Mr. Chanele Wadhwani (phonetic), Your Honor.  It's in
12  relation to a Motel 6 bribery scheme that's pending before
13  Judge Hinojosa.
14              THE COURT:  Okay.
15              MR. LOPEZ:  That is as a result of Mr. Wynn, who
16  is currently representing Mr. Wadhwani's prior
17  representation of Mr. Garcia.
18              THE COURT:  Okay.
19              MR. LOPEZ:  So that was one thing that the
20  Government did want to bring to the Court's attention.
21              THE COURT:  Okay.
22              MR. LOPEZ:  In light of the fact that those are
23  proper protected statements and statements that may have
24  been made to the attorney and protected by the
25  attorney/client privilege even beyond what was stated within

1  the proffer, that would be some of the Government's concern.
2              In addition, there was one of these interviews
3  that took place with regards to filter teams that would pose
4  an additional concern.
5              THE COURT: Okay. All right. I'll keep that all
6  in mind.
7              Okay. From the Government's perspective, is there
8  anything else than the two issues?
9              And I take it from your reference to the Public
10 Defender's Office that the Government would feel that that
11 would present the same issue you stated that you don't think
12 the Public Defender's Office should be appoint if the Court
13 decides to?
14             MR. LOPEZ: That would be correct, Your Honor.
15             THE COURT: Okay. All right. And then regarding
16 the manner in which these statements were obtained, anything
17 else from the Government's perspective that you think should
18 go into the Court's consideration of this matter, other than
19 what's before me already?
20             MR. LOPEZ: Nothing further from the Government,
21 Your Honor.
22             THE COURT: All right. On Mr. Garcia's part,
23 Mr. Conrad, is there anything else that you think ought to
24 go into consideration?
25             MR. CONRAD: I'm not understanding how the Public

1  Defender's Office would be conflicted out, but whoever the
2  Court chooses to appoint is fine with me.
3             THE COURT:  Well, okay.  All right.  And I mean,
4  to the extent that you want a little bit more understanding,
5  basically, Mr. Lopez -- because it is one office, even
6  though they have multiple Assistant Federal Public
7  Defenders, it's the one office; and so that if I were to
8  appoint the Public Defender's Office that would be no
9  different than if I had chosen to go with your recommended
10 appointment, and I've already said I'm not going to do that.
11            So basically that's what they're saying.
12            MR. CONRAD:  I'm not aware of Mr. Wadhwani having
13 a parallel with this case, if --
14            THE COURT:  No, no, the stip case.  It's the stip
15 case, but there's a similar issue as far as the attorney
16 representing Mr. Wadhwani in that case having previously
17 represented Mr. Garcia, so that's it.
18            MR. CONRAD:  Well, I don't know that similar
19 issues or problems along the same facts and the same
20 individuals are not involved, and I'm not seeing where that
21 is.
22            THE COURT:  Okay.  Well, I think you're sort of
23 missing the point, but that's all right.  Okay, so.
24            Okay.  So I am going to, you know, make a decision
25 relatively quickly in light of the fact obviously this case

1  has been moving along for some time.  I'm going to give you
2  right now the chance that if you think there is anything
3  else I need to consider before I decide to move forward?  So
4  basically at this point in time my consideration is, one, I
5  decide it myself.
6          And if I decide, obviously my decision can go a
7  lot of different ways.  If I decide there's no conflict,
8  obviously we move forward as we are.
9          If I decide that there is an actual conflict or a
10 serious potential for an actual conflict, then it would
11 result in disqualification.
12          If I decide that there is a potential, but it
13 doesn't look like it's a serious potential, then I would
14 bring Mr. Garcia back before the Court to sort of lay out
15 what I see as a potential and give him the choice of going
16 forward with you, Mr. Conrad, or choosing to find other
17 counsel.
18          So those are basically, as I see it right now, the
19 three ways that this can go.  I will let you know as quickly
20 as I can, you know, if I am deciding myself or looking at,
21 you know, conflict counsel.
22          Obviously if I look to conflict counsel, then that
23 possibly would take a little bit of time before we look at
24 which of those directions the case is going.
25          MR. CONRAD:  Fair enough.

1            Two question:  Is there a conflict?  And can it be
2    waived?
3            My feeling is there is no conflict.  If there's an
4    appearance of conflict, it would be waived.
5            That's our position.
6            THE COURT:  Okay.  I understand your position.
7            All right.  Okay.  Anything else at this time?
8            MR. LOPEZ:  Nothing further from the Government,
9    Your Honor.
10           THE COURT:  All right.  Thank you, then.  You may
11   be excused.
12           Thank you.
13           MR. CONRAD:  Thank you.
14           Oh, before we end, how does this effect future
15   studies on this case?
16           THE COURT:  At the moment, it doesn't affect
17   anything until I tell you which direction we're going and
18   then we see whether it affects anything.
19           MR. CONRAD:  Okay.  Thank you, Judge.
20           THE COURT:  All right.  Thank you.
21           COURTROOM DEPUTY:  All rise.
22       (Proceedings adjourned at 3:19 p.m.)
23
24
25                           * * * * *

1		*I certify that the foregoing is a correct*
2	*transcript to the best of my ability produced from the*
3	*electronic sound recording of the proceedings in the above-*
4	*entitled matter.*
5	*/S/ MARY D. HENRY*
6	*CERTIFIED BY THE AMERICAN ASSOCIATION OF*
7	*ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*
8	*JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
9	*JTT TRANSCRIPT #61705*
10	*DATE FILED:  FEBRUARY 13, 2020*
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25