1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE SOUTHERN DISTRICT OF TEXAS

3                            MCALLEN DIVISION

4    UNITED STATES OF AMERICA        §      CASE NOS. 7:19-CR-00522-1
                                     §                7:19-CR-00522-3
5    VERSUS                          §                7:19-CR-00522-4
                                     §      MCALLEN, TEXAS
6    RICARDO QUINTANILLA (1)         §      THURSDAY,
     ARTURO C. CUELLAR (3)           §      APRIL 1, 2021
7    DANIEL J. GARCIA (4)            §      3:07 P.M. TO 3:58 P.M.

8                        MOTION HEARING (VIA ZOOM)

9               BEFORE THE HONORABLE MICAELA ALVAREZ
                    UNITED STATES DISTRICT JUDGE

10

11

12   APPEARANCES:                           SEE NEXT PAGE

13   ELECTRONIC RECORDING OFFICER:          XAVIER AVALOS

14   COURTROOM CLERK:                       JULIE SANCHEZ

15

16

17

18

19

20                     TRANSCRIPTION SERVICE BY:

21              JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                     935 Eldridge Road, #144
22                   Sugar Land, TX 77478
                        281-277-5325
23              mary@judicialtranscribers.com

24

25       Proceedings recorded by electronic sound recording;
            transcript produced by transcription service.

1                      <u>APPEARANCES (VIA ZOOM)</u>:

2

3   FOR THE PLAINTIFF:          US ATTORNEY'S OFFICE
                               Roberto Lopez, Jr.
4                              1701 W. Highway 83, Suite 600
                               McAllen, TX  78501
5

6                              U.S. DEPARTMENT OF JUSTICE
                               Peter Nothstein
7                              1400 New York Ave., NW, 12th Fl.
                               Washington, DC  20005
8

9

10  FOR DEFENDANT QUINTANILLA:  PENA ALECZANDER
                               3900 N. 10th St., Suite 1050
11                             McAllen, TX  78501

12

13  FOR DEFENDANT ARTURO       ATTORNEY AT LAW
    CUELLAR:                   Carlos Andres Garcia
14                             1305 E. Griffin Parkway
                               Mission, TX  78572
15

16  FOR DEFENDANT GARCIA:      ATTORNEY AT LAW
                               Oscar Vega
17                             2415 N. 10th Street
                               McAllen, TX  78501
18

19

20

21

22

23

24

25

1          MCALLEN, TEXAS; THURSDAY, APRIL 1, 2021; 3:07 P.M.

2          THE COURT:  Then let me turn to Case Number

3  19-522, Ricardo Quintanilla, Arturo Cuellar, and Daniel

4  Garcia.

5          MR. LOPEZ:  Good afternoon, Your Honor, Bobbie

6  Lopez, Peter Nothstein, and Erica Waymack on behalf of the

7  Government, Your Honor.

8       (Pause)

9          THE COURT:  Can I get announcements from counsel

10  then?  Let's start with Mr. Quintanilla.

11          THE CLERK:  Mr. Pena's speaking but we can't hear.

12          THE COURT:  You may be on mute, Mr. Pena, because

13  we're not hearing you.

14          MR. PENA:  (Indiscernible).

15          THE COURT:  I can hear some, but not -- it's --

16          MR. PENA:  Can you hear me now?

17          THE COURT:  That's better.  Maybe a little bit

18  more on the volume maybe.

19          MR. PENA:  Okay.

20          THE COURT:  All right.  Okay, Mr. Pena, I think

21  that's better.  And I take it that is Mr. Quintanilla with

22  you.

23          MR. PENA:  That's correct, Your Honor.

24          THE COURT:  All right.  Okay.  And then for

25  Mr. Cuellar.

1          MR. GARCIA:  May it please the Court, Your Honor,

2   Carlos Garcia on behalf of Mr. Cuellar.  And I'm turning my

3   camera now so the Court can see that Mr. Cuellar is present

4   here in my office.

5          THE COURT:  All right, thank you.

6          MR. GARCIA:  Yes, Your Honor.

7          THE COURT:  And then --

8          MR. VEGA:  Judge, Oscar Vega on behalf of

9   Mr. Danny Garcia.  He's on, he's present, he's on.  And

10  Mr. Sully, who's also co-counsel, is also on, Judge.

11         THE COURT:  I did see Mr. Garcia there, yes, okay.

12  So we have various matters that we need to address.  I want

13  to start here with the Government's motion to compel

14  reciprocal discovery.  I've looked through the filings from

15  counsel as to the Government's position as well as at

16  counsel's position.

17         And unless somebody has something specific to add

18  that is not covered in any of those filings, the Court is

19  ready to proceed.  And only if there is something specific

20  to add that isn't covered already am I going to hear from

21  counsel.  So from the Government is there anything else

22  specific to add?

23         Mr. Lopez.

24         MR. LOPEZ:  No, Your Honor, I don't think there's

25  anything else specific to add.

1          THE COURT:  Okay.  Mr. Pena.

2          MR. PENA:  No, Your Honor.

3          THE COURT:  Mr. Garcia.

4          MR. GARCIA:  No, Your Honor.

5          THE COURT:  Mr. Vega.

6          MR. VEGA:  No, Your Honor.

7          THE COURT:  All right.  So I've gone through this

8   as I've said, and I'll begin with just some general

9   observations from the Court, and that is one I think -- and

10  I think all counsel recognize this, that Rule 16 does not

11  have a specific procedural manner in which a request for

12  discovery must be made.  The rule obviously does provide

13  that upon request, but it doesn't say must be a formal

14  request and doesn't say must be a written request, it

15  doesn't say it must specifically reference Rule 16, it

16  doesn't say it has to be filed with the Court.  So there is

17  no -- and the Court looked at some of the cases referenced

18  here and I did not find any court that has ruled

19  specifically about how it has to be done.  All the courts

20  have said it can be informal or formal.

21          So the Court in this case, I do agree with defense

22  counsel that I did not find in going through everything any

23  request that the Court would say is a formal, written

24  request for Rule 16 discovery stated in so many terms.

25  However, because the rule does not require a formal written

1   request stated in terms of we are making a Rule 16

2   discovery, the Court does find that the request can be made

3   in many different ways.  And here the Court does first of

4   all find that the Government has disclosed Rule 16 material.

5   So that's part of what trickles (phonetic) the Defendants'

6   reciprocal obligations.

7           And then the Court also does find that the parties

8   did enter into an agreed motion for protective order, that

9   that agreed motion for protective order did specifically

10  reference that it was being entered into pursuant to Rule

11  16.  And, again, in that motion for protective order neither

12  side says Defendants have made a Rule 16 request to the

13  Government.  But that motion was made pursuant to Rule 16.

14          The Court also does find that there have been some

15  limited filings where the Court in reviewing those

16  determines that a request was made.  And in particular, in

17  Mr. Quintanilla's motion to exclude, the Defendant does

18  include their language that -- and I've made my own notes

19  here, but that language does say the -- just so -- other

20  provisions, but then the language says, Defendant requests

21  that the Government independently produce pursuant to, and

22  so there is a request there made for production of material

23  that would be Rule 16 material.

24          Mr. Garcia adopted Defendant's motions there.  And

25  the Court looks at all of that together.  And I understand

1  the arguments made from defense counsel about the Court's

2  order here including the Rule 16 material.  I do think that

3  there are some items that would -- that the Government would

4  be obligated to disclose regardless of the Court's order,

5  regardless of the Rule 16 material that is *Brady* or *Giglio*.

6  Obviously those have to be disclosed.  Some of that could

7  also constitute Rule 16 material.

8          So Rule 16 or the failure to request Rule 16

9  material would not obviate the Government's need to produce

10 some of the *Brady* or *Giglio*-type material.  So there may be

11 some overlap there.  So I'm not finding that just the fact

12 that the Government has these independent obligations then

13 triggers the Defendants' reciprocal discovery.

14         I'm also not necessarily finding that the mere

15 fact the Government has in our division here, and I guess

16 throughout the district, what we refer to as an open door

17 policy here.  So -- but I do think that in this case that

18 the Defendants' obligations to produce material have been

19 triggered here, both because of the fact that they entered

20 into this agreed protective order as well as in particular

21 here for Mr. Quintanilla and Mr. Garcia, because of the

22 request that they made here.  I recognize that Mr. Cuellar

23 did not join in Mr. Quintanilla's motion but Mr. Cuellar did

24 join in the motion for protective order.

25         The -- sort of the Court in going through all of

1   this and evaluating all of this also contemplated, you know,

2   if the Court determined that the Defendants had in no manner

3   made a request for Rule 16 material then, you know, what

4   options do we have here.  And one of the options the Court

5   thought, well, the Court could basically amend its order,

6   withdraw its order ordering the Government to disclose Rule

7   16 material.  But quite frankly I don't think that this case

8   would warrant that kind of order and that it would be an

9   extreme hardship to defense counsel if they weren't able to

10  review all the material that has been produced in this case.

11  I don't know that all of that material -- and obviously I

12  have not reviewed it.

13          I do not know that all of that material would be

14  -- that the Government would be obligated to produce all of

15  that material but for the Government's order.  So the Court

16  does believe that it has, based on what is before the Court,

17  a record that establishes that counsel have requested Rule

18  16 material here so that the Defendants' obligation is

19  triggered here.  Now, the question then is going to be

20  timing, and I want to come back to that issue.

21          So, first of all, that is the Court's ruling on

22  the Government's motion to compel, that defense counsel is

23  obligated to produce the reciprocal material.

24          The Court wants to turn next to address a couple

25  of the motions that I'm going to address, only to say I'm

1  not going to address them, and that is we have the motions

2  in limine, we have also the motion -- well I guess I don't

3  need to do anything with the 404 motion.  But the motion in

4  limine, the two of the ones that are pending now, the Court

5  wants to address those after I address the motion for

6  continuance.  And in that regard, as to the motion for

7  continuance, is there anything else from any counsel other

8  than what is already in the motions?

9         MR. NOTHSTEIN:  Not from the Government, Your

10 Honor.

11        THE COURT:  All right.  Defense counsel.

12        MR. PENA:  No, Your Honor, for Mr. Quintanilla.

13        THE COURT:  Okay.

14        MR. GARCIA:  No on behalf of Mr. Cuellar, Your

15 Honor.

16        THE COURT:  Mr. Vega is on mute, but I take it

17 you're saying no, Mr. Vega?

18        MR. VEGA:  Yes, Judge, I'm sorry.  It was a "no"

19 for Mr. Garcia.

20        THE COURT:  All right.  I -- you know, back when I

21 gave you this April setting I was really hopeful, and I

22 probably said as much back then, that month-to-month I am

23 always hopeful, and at some point in time I probably should

24 just give up being hopeful.  But we have just as of -- I

25 don't know if the order has actually been posted yet, but we

1  have just extended our order closing -- keeping the

2  courthouse closed to the public for another two months.  And

3  Mr. Garcia I believe is the one that noted that Judge Crane

4  has had a few trials here but they've all been one-defendant

5  trials and they have taken one or two days, maybe I think

6  one of them may been a little bit longer.  But I think we

7  could do such a trial.

8          I tend to agree with counsel that there are many

9  issues that would be presented.  And I -- you know, I -- and

10 probably like all of you and I hope like all of you would

11 like to get this trial taken care of as quickly as possible.

12 But I do see the issues raised.  And I think Mr. Garcia did

13 a really good job of laying out some of those issues.  It

14 would be I think a difficult situation to try to get a

15 three-defendant trial of any sort done well right now.  But

16 I think this trial in particular would be I think very

17 difficult to handle with the protocols that we have in place

18 for safety measures.

19         And we've, as I've already noted, extended our

20 order for another two months.  And as much as I would like

21 to get this case back on the docket as quickly as possible

22 I'm thinking that we should probably set this case for trial

23 something more like three or four months down the road

24 because even setting it I think at the end of that two

25 months would be pushing it for this trial.  I think we could

1  safely handle a one-defendant short trial, but even when we

2  start back up we probably will want to take care of those

3  simpler trials.  And certainly by "simpler" I don't mean not

4  as serious but those that don't have as many defendants or

5  as many, you know, issues to try with.  So I'm thinking

6  maybe three or four months down the road but I'm certainly

7  willing to hear from counsel as to what you may think.  And

8  I'll start with the Government.

9         MR. NOTHSTEIN:  Thank you, Your Honor.  This is

10  Peter Nothstein.

11         We certainly understand the Court's position on

12  this and the concerns with the ability to try a case like

13  this.  The parties actually -- we spoke in anticipation of

14  the court -- the case being continued.  And defense counsel

15  can correct me if I'm incorrect on this but I think we'd

16  agreed that perhaps we request a date in September.  I know

17  that's a ways out, Your Honor, but I think that would give

18  us sufficient time to ensure that the situation had changed

19  and we could hold a case safely.

20         THE COURT:  All right.  I'll start with you,

21  Mr. Pena.  Do you generally agree?

22         MR. PENA:  That's correct, Your Honor, we agree.

23         THE COURT:  Mr. Garcia.

24         MR. GARCIA:  Your Honor, we're in agreement with

25  the Government's position.

1          THE COURT:  And Mr. Vega.

2          MR. VEGA:  Judge, we concur with a date in

3   September.

4          THE COURT:  Okay.  Well, the Court's calendar for

5   September is still relatively open.  We of course in

6   September have that first Monday being Labor Day.  We can

7   look at starting the following Monday, the 13th, or we could

8   -- actually we could do jury -- we could do this.  We right

9   now have -- and, you know, we can work around this or change

10  it, but right now we have September the 8th as a regular

11  jury selection day.  That's when our jury panel is

12  ordinarily scheduled to come in.  So we could look at doing

13  the jury selection on that day and then starting the

14  evidentiary portion the following Monday.

15         With these many defendants I don't know how long

16  jury selection will take but I would expect it would

17  probably take a good portion of the day.  And then rather

18  than starting with the testimony on Thursday, because I

19  expect openings will take also a good portion of the day, we

20  could just start that following Monday.

21         Does that sound like a workable schedule for

22  everybody?  And again I'll start with the Government,

23  Mr. Lopez, Mr. Nothstein, whomever.

24         MR. NOTHSTEIN:  Yes, Your Honor.  That's agreeable

25  to the Government, Your Honor.

1          THE COURT:  All right.  Mr. Pena.

2          MR. PENA:  We agree, Your Honor.

3          THE COURT:  Mr. Garcia.

4          MR. GARCIA:  Yes, Your Honor, we're in agreement.

5          THE COURT:  And Mr. Vega.

6          MR. VEGA:  We're in agreement, Your Honor.

7          THE COURT:  Okay.  All right.  So then we will

8  proceed that way.  Then jury selection will be scheduled for

9  September the 8th at 9:00 a.m., however long that takes, and

10  then we'll begin with the evidentiary portion of the trial

11  on September the 13th, also at 9:00 a.m.  Okay.

12          Then with that then let's work back.  And so what

13  I would like to do then is work back on some of these other

14  issues.  The first that I think we should start with is the

15  scheduling order.  And I understand the Government's

16  position but I really see no reason having now put off the

17  trial to September why the -- and I extended the time for

18  filing motions to the 5th just to give me an opportunity for

19  this hearing and sort of as a placeholder.  But I don't see

20  any reason quite frankly to stick to that date.

21          Now I expect defense counsel agrees with it.  I

22  know the Government's position was that we should sort of

23  move forward.  But with the date now for trial in September,

24  I think that this deadline should be moved to give counsel

25  adequate time.  And I'm not necessarily basing that on the

1    argument that there's been a lot of recent material

2    disclosed but more that the timing is not so critical now

3    that that trial date has been moved back some.  So although

4    I understand the Government's position regarding the

5    Defendants' original request here, if you feel otherwise

6    aside from what you have already presented to the Court I

7    will consider your position.  But otherwise I am inclined to

8    grant the request for that date to be extended beyond what

9    I've already done right now.  So I'm not sure Mr. Lopez or

10   who is going to address that.

11         Mr. Nothstein.

12         MR. NOTHSTEIN:  Yes, Your Honor.  Yes, we

13   certainly understand the Court's position on that.  I think

14   what we would suggest, though, or request, Your Honor, is

15   that if the motion deadline is going to be moved, it not

16   necessarily be moved to shortly before the trial.  I think

17   that what happened this week has shown us that we may have

18   some issues that may need litigated.

19         Mr. Garcia has noted he may have a motion to

20   suppress.  I believe there have been some requests to the

21   FBI for documents under the *Twohey* process.  In the event

22   that those are denied, there needs to be potentially

23   litigated on a motion to compel.  And certainly I know the

24   defense would like those documents as soon as they would --

25   could get them.  So we would just suggest that the motion

1    deadline, it just not be pushed out all the way, perhaps

2    maybe to May or June so there could be early resolution of

3    some issues.

4         THE COURT:  Well my thought had been the latter

5    part of June or maybe the early part of July.  And along

6    with that, one of the other things that I would like to do

7    is set this -- set an actual pretrial conference before the

8    Court to address I referenced earlier the motions in limine

9    but to address those matters.  I can't really rule on the

10   motions in limine as they've been presented to me right now

11   because without having a little bit more substance presented

12   there, it's impossible for the Court to make a well-informed

13   decision.

14        So my thought had been that we set that motion

15   deadline and then we set it such that I can -- and, again,

16   depending on the time, set then a pretrial conference soon

17   after that motion deadline so that the Court can address any

18   motions that have been filed that need to be addressed in a

19   hearing.  So from defense counsel, other than what you've

20   already presented do you have something else on this issue?

21        MR. PENA:  No, Your Honor.  We're in agreement to

22   extend the deadlines back.  And I think a June, early July

23   setting for the pretrial would work.

24        MR. GARCIA:  I'm in agreement, Judge, with that.

25        THE COURT:  Okay.

1         MR. VEGA:  I think July would work for us, too,

2    Judge.

3         THE COURT:  Okay.  And then and I'm -- I have said

4    that I had thought, you know, a late June, early July, and

5    part of the reason for that is because I do want to schedule

6    a pretrial conference, again depending on what the Court has

7    to address at that time.  There may be other issues that's

8    then have to be worked through.

9         I don't want to -- because we're looking at

10   September trial, I don't want to have those issues pushing

11   all the way up to the time of trial such that then there,

12   you know, is some other reason besides the pandemic that

13   would necessitate another reset.  So I'm inclined more to

14   set that deadline for June and then that way we can look at

15   July for a pretrial conference.  And since that is just a

16   deadline, not -- that does not require an appearance by

17   anybody, that date I will just pick in June.  And it's the

18   kind of deadline that even if you have vacation plans in

19   June, you can -- one, because everything can be filed

20   electronically, you can still take care of that, but of

21   course you can always file early and not have to interrupt

22   your vacation days.

23        And, you know, I'm just saying because people take

24   vacations in those months.  Although this pandemic has

25   thrown so many things out of, you know, the routine that who

1   knows what will happen come June.

2          But let me then look at that deadline being set

3   for -- I don't know.  I don't think I have this correct.

4   No, there we go, okay.  Let me set that deadline then for

5   June the 21st for any pretrial motion to be filed, and this

6   is whether it's defense pretrial motion or Government

7   pretrial motion.  And then I am going to give a response

8   deadline for that of July the 2nd.

9          And you don't have to respond, but obviously it

10  would be -- if you want to respond it would be easier for

11  the Court to have that in writing even before we have a

12  hearing.

13         And then I think, Ms. Sanchez, can we set a

14  hearing for July the 9th.  Would that be --

15         THE CLERK:  Yes, ma'am.

16         THE COURT:  -- any -- okay.  So let me set a

17  pretrial conference hearing for July the 9th at 9:00 a.m.

18  And at that time then the Court would consider if any of

19  these motions require a hearing, the Court would consider

20  that.

21         If there is a motion to suppress filed that

22  requires a hearing, that would be the date for that.  If it

23  requires any witnesses to be called, you would be expected

24  to have your witnesses ready to go on that date.  That will

25  be in-person, regardless of where we are as a whole.  I want

1   to have that hearing in person.  If, heaven forbid, that

2   things are a lot worse than they are right now, if we are

3   unable to have an in-person hearing then the Court will let

4   you know ahead of time.  But I expect that to be in person.

5           MR. NOTHSTEIN:  Your Honor, on that note, if I

6   may, I am set for about a month-long trial in July in

7   Tallahassee, Florida.  So I don't know if the Court would

8   consider perhaps maybe doing the pretrial in early August.

9   If not, if I could just get permission, Your Honor, to

10  participate by phone as I will be in Florida for that trial.

11          THE COURT:  Well you do have able counsel here.

12  The Court will give you the option of calling in, but I'm

13  not promising that you'll be the lead from the Government.

14  I may expect counsel who is present to be the lead on that.

15  But I don't want to put it off any further than July the

16  9th.

17          MR. NOTHSTEIN:  Yes, Your Honor.

18          THE COURT:  Okay.  So that addresses then the

19  motion deadline.  I've already addressed the motion to

20  compel but I haven't set a deadline as far as the counsels'

21  response to that.  In that regard I am hesitant to give you

22  a hard and fast deadline because of course it is an ongoing

23  obligation.  So in that regard what I would say is that to

24  the extent that defense counsel have material that is

25  responsive to Rule 16, and I know that from the filings I

1  understand that some counsel have indicated that they do

2  have some, that that should be disclosed.

3          And I think if I give you two weeks to, you know,

4  get that taken care of, what you have already, is there any

5  reason why that couldn't be done?  From defense counsel who

6  have indicated that they may have something.

7          MR. PENA:  Your Honor, from Quintanilla, the

8  concern I have -- and I think the two weeks will work for us

9  as long as a continuing obligation.  The concern I have is

10 the methodology.  So if we have materials that are in

11 different formats, my concern is we -- I don't have a

12 resource to duplicate, make copies, and then produce those.

13 We could make those items available for the Government, they

14 could come inspect those items at the office.  And as long

15 as that is consistent with the Court's order then we can do

16 it in the two weeks.

17         THE COURT:  And, yes, and I would also encourage

18 of course one -- and some -- you may have some documents,

19 and I'm not saying necessarily so, but if you have some

20 documents that have sort of been generated from the

21 Government, obviously you don't have to disclose that to the

22 Government, what they have disclosed to you already.  So I

23 don't know when you're speaking of the manner of disclosure

24 here whether we're speaking of volumes and volumes and

25 volumes or more limited.

1          I would say if it is more limited, you know, a few

2    pages here and there, that that can be copied.  And I think

3    two weeks would be adequate.  But if we are speaking of

4    voluminous disclosures here then I have no difficulty with

5    what you have proposed, Mr. Pena.  I don't know if anybody

6    else has the same situation.  But, Mr. Lopez, I know that

7    the Government in many instances produces it electronically

8    to defense counsel so in that regard I also do think that if

9    you have it in electronic format, Mr. Pena and Mr. Garcia

10   and Mr. Vega, the same applies to you, that the Government

11   can provide you with the disk or USB or something such that

12   it could be produced that way as well.

13          Does anybody have any issue with that?

14          MR. LOPEZ:  No, Your Honor.  And one of the things

15   that the Government can do which I have done with other

16   defense counsel here in this -- in the McAllen Division is

17   we have USA Effects, which is a discovery portal, which I

18   believe would allow them to upload electronic data that we'd

19   be getting in real time with the DC attorneys as well, Your

20   Honor.

21          THE COURT:  And I'm not ordering anybody if it

22   isn't already in electronic format.  But I know these days

23   almost everything is.  I mean, you get bank statements in

24   electronic format, you get minutes from meetings.  I mean,

25   almost everything else these days is done that way.  So if

1  it's already in that format I would certainly encourage you

2  to look at producing it that way; might save you some time

3  and trouble.  If you only have hard copies, I am not

4  ordering you at this stage to put that into electronic

5  format because I know that can be time-consuming depending

6  on the volume.

7          MR. PENA:  And, Your Honor, then can I bring up

8  one thing?  Since the Court has ordered reciprocal

9  discovery, there -- in the voluminous records that we

10  received from the Government, there are multiple items in

11  that.  And though they did produce items to us digitally,

12  they made other items only available for inspection or at

13  the FBI building or at the Government offices, and so it's

14  made it very difficult for the defense in that we can go

15  over to those locations, we cannot take any electronics, we

16  can't take hard copies.

17          And so if the Court is going to order the defense

18  to produce some of these items to the Government, can the

19  Court order the Government then to make those items

20  digitally available to the defense?

21          THE COURT:  I would say the same thing.  I would

22  agree with Mr. Pena.  And, Mr. Lopez, especially, you know,

23  this is a document-intensive case.  And while it's been a

24  long time since I practiced, I do know, you know, that if

25  you -- and, you know, I tell a lot of people that I still

1  like paper.  I mean, if I'm reading PSR's, I have the

2  written paper in front of me even though they're all

3  electronic because I am making notes on that.  I'm, you

4  know, comparing one thing to the other.

5        You know, there really is an advantage to having

6  the documents available to you at any time of the day or

7  night.  And I suspect that these attorneys are not the kind

8  that keep just 8:00 to 5:00 hours.  And I doubt that the

9  Government is letting them come in at 11:00 o'clock at

10  night.

11        So, Mr. Lopez, I would say if those, they're in

12  electronic format, that the same thing would apply to the

13  Government in that I really do feel that this is something

14  that, you know, counsel should have access to that at

15  whatever time counsel wants to look at it rather than having

16  to go over to the FBI building.

17        MR. NOTHSTEIN:  Your Honor, if I may be heard on

18  that.  If the Court recalls, when we initially produced our

19  discovery, there was a sort of portion of it that we

20  produced and gave electronic copies to the defense.  And

21  then there was another portion that we made available for

22  review at the U.S. Attorney's Office.  And then shortly

23  after that, when it was brought to the Court's attention I

24  think in the summer of 2019, Your Honor actually ordered us

25  to produce all of the documents that were available for

1   review to the defense, which we have done.

2          THE COURT:  Okay.

3          MR. NOTHSTEIN:  And since then we have produced

4   everything straight to the defense.  In fact, we have

5   provided -- we have some large hard drives so we could give

6   them copies of things like iPhones that were imaged, email

7   accounts.  That's all been provided.  I'm not aware of

8   anything that is currently just at the FBI or the U.S.

9   Attorney's Office the defense counsel needs to review.  And

10  we've received, as far as I'm aware, no requests to review

11  anything as yet.

12          So if there is something Mr. Pena doesn't have, we

13  are more than happy to provide a copy of it.  But there's

14  nothing we're withholding for that purpose.  So we agree

15  with Your Honor, we think that's the right way to do it and

16  we will do that.  We just aren't aware of anything that's

17  subject or that needs to be turned over at this point.

18          THE COURT:  So --

19          MR. PENA:  And, Your Honor, we will work with

20  Mr. Nothstein on that issue because there are some items we

21  identified.  I'll communicate with them and if we have any

22  issues, we'll come to the Court.

23          THE COURT:  That's the best way to approach that.

24  Okay.  So then of course after that two-week period, if

25  there is anything new -- and this is true again to the

1  Government as well, that obviously this is a continuing

2  obligation all the way up to and including through the

3  trial.  So thereafter it would just be produced once you

4  have a sense of, you know, this is something that is

5  discoverable in accordance with the Court's order here.  All

6  right, so that takes care of that issue.  Then --

7           MR. GARCIA:  Your Honor, if I may?

8           THE COURT:  Yes.

9           MR. GARCIA:  And I apologize.

10          THE COURT:  Yes.

11          MR. GARCIA:  Your Honor, does that include the

12  information as it relates to consulting experts that have

13  not completed their investigation to this point?

14          THE COURT:  No.  Consulting -- well, first of all,

15  consulting experts, if they're just consulting experts, and

16  I'll -- I go back and re-read the rules all the time.  But

17  if I recall correctly those do not have to be disclosed,

18  okay.  And if you have a consulting expert and at some point

19  in time then you decide to use that expert at trial, then at

20  that point in time that's when the disclosure has to be

21  made.  And I trust that all counsel are professional, that

22  they do in fact disclose in a timely fashion when and if

23  they make that determination, that counsel would not just

24  hold off unreasonably, so.

25          MR. GARCIA:  Certainly, Your Honor.

1          MR. PENA:  And, Your Honor, and to clarify on that

2     issue on the experts, neither side, neither the Government

3     nor the defense, have designated any experts because we

4     don't have designation deadlines.  And so just to clarify as

5     far as any designation of the experts and then producing any

6     materials reviewed by the experts, would that occur when we

7     submit our witness list?  But I assume that's when we would

8     finally disclose those witnesses.

9          THE COURT:  So let me come back to that because

10    that is one of the other issues that is before the Court as

11    well.  And let me back up also a little bit that I've

12    indicated the Court's finding that defense counsel have made

13    a Rule 16 discovery but I did indicate also that while the

14    Government has produced Rule 16 material, the defense

15    obligation is triggered when the Government does that.  So

16    if they haven't produced expert material, then the defense

17    obligation is not yet triggered.  But if they do, then that

18    is triggered by the Government producing that material.

19          So with that then let's go ahead and talk about

20    the disclosure of the witness list and exhibits.  And I have

21    gone through the defense motion and I do understand.  And I

22    do agree that the Government has the obligation here to

23    prove the Defendant guilty as to each charge and defense

24    does not have any obligation.  But this is the kind of trial

25    that can very quickly get very messy I think if we don't all

1    try to work together in those areas where we can.  So while

2    I understand the defense motion asking the Court to

3    reconsider its order for disclosure of witnesses and

4    exhibits, I am not inclined to withdraw that motion.  I do

5    think that that deadline -- and I have it noted here that

6    that deadline does need to be moved closer to trial.  But I

7    do still believe that that deadline or that requirement to

8    disclose on both sides is necessary because we will need to

9    try and do everything that we can to move this trial

10   smoothly.

11           And without in any way sort of impinging on the

12   Defendants' Sixth Amendment rights, I want to make sure that

13   we can move this trial smoothly.  So as to the motion to

14   reconsider, while I do reconsider, I am not withdrawing the

15   Court's order to disclose witnesses and exhibits or to

16   exchange those.  But I will move that closer to trial.  So

17   in that regard, originally I had it roughly a month out from

18   the trial date.  I think something along those lines would

19   still work.  And that can, you know, move it either way a

20   little bit if counsel feels that it should be something

21   either a little bit out or a little bit closer, I can

22   certainly consider that.

23           But the order will still remain.  So I guess from

24   the Government, is there -- Government have a position as to

25   timing?

1          MR. NOTHSTEIN:  Your Honor, I think that we would

2    ask for maybe a month before trial.

3          THE COURT:  All right.  From defense counsel.

4          MR. PENA:  (No audible response).

5          THE COURT:  Mr. Pena, you went on mute, I'm sorry.

6    And before you -- actually, before I hear from you,

7    Mr. Pena, one of the things that -- and it did sort of as I

8    was going through these motions, it did occur to me that one

9    thing I could do that maybe -- and I don't know if the

10   defense counsel feels that this really offers them any kind

11   of relief, but it did occur to me that since your strategy

12   may depend on what the Government is doing, that we could

13   get the Government's list and witnesses and then a week or

14   two later then have defense counsel disclose their exhibits

15   and witness list.

16         And, again, it's not necessarily we're giving you

17   all the relief that you want but I think it maybe gives you

18   a little bit of relief.

19         MR. GARCIA:  Your Honor, you read my mind.  That

20   was exactly what I was going to request so thank you very

21   much.

22         THE COURT:  Okay.  So then since we have a

23   September -- what did I say, September what trial date?

24         THE CLERK:  September 8th.

25         THE COURT:  September 8th trial date, then we

1    would look -- let's look at July the -- I mean, sorry,

2    August the 9th for the Government to disclose their witness

3    list and exhibit list.  And on the witness list, I will ask

4    the Government also, even though they will not be strictly

5    bound to this, to list the witnesses in the anticipated

6    order.

7            Now, again, I know things change as you get closer

8    to trial.  And then even during the trial itself things can

9    develop where you want to reorder your witnesses.  But I

10   will ask that you give some thought and then list those

11   witnesses in the anticipated order that you are going to

12   call them.  I think that will help defense start to get

13   ready for their own case.  So that will be August the 9th,

14   so then I will have a deadline for the defense to disclose

15   witnesses and exhibits for the 23rd of August.

16           And in that regard, if you anticipate calling

17   anybody other than what the Government has, that's who you

18   should list.  If your list is going to be just, you know,

19   the Government's witnesses and for cross-examination or even

20   in your case-in-chief, then you can just indicate as much.

21   But you should provide a list of some sort.

22           MR. GARCIA:  Thank you, Your Honor.

23           THE COURT:  All right.  Okay.  So that addresses

24   that motion.  Then I think I covered what I had from the

25   filings at this point.  If I've overlooked something,

1    certainly bring it to my attention now.

2           MR. NOTHSTEIN:  Your Honor, this is Mr. Nothstein.

3    I did want to actually just raise one point on the expert

4    witness issue.  And Mr. Pena is correct, we have not turned

5    over any expert witness disclosures.  That's because we are

6    not going to call an expert witness.  We have no intent on

7    calling experts.  So that being the case, Your Honor, I

8    believe that satisfies our requirement to disclose under

9    Rule 16(a)(1)(G).  And therefore since we have requested

10   reciprocal discovery that we would be entitled to the

11   Defendants' disclosures under Rule 16(b)(1)(C).

12          THE COURT:  Okay.  I don't have the rules

13   memorized but the rule provides that if the request is made,

14   and the Court has determined that a request has been made

15   for Rule 16, but I thought the rule said that if the

16   Government discloses --

17          MR. NOTHSTEIN:  And I guess we're in a little

18   difficult situation, Your Honor, to the extent that request

19   has been made from defense to know of our expert

20   disclosures, I'm representing now there is no expert

21   disclosure.  So our disclosure is nothing essentially.  And

22   that sort of satisfies our obligation.  It's the only way we

23   can do it.

24          THE COURT:  What I -- and what I'm saying is that

25   in those cases where the Government's saying we're not

1    calling witnesses, I don't know that the rule is triggered.

2    I'm looking at the rule as we speak.  Because the rule is

3    that the Government must give a written summary, and then if

4    the defendant has made that request -- yeah, it's a little

5    -- and let me think about that because the rule provides

6    that, you know, if the defendant requests, then the

7    Government has to give a written summary.  And then the

8    reciprocal rule is that if the Government has requested and

9    the Government has complied, then the defense obligation is

10   triggered.

11          And I'll look at the notes and see if the notes

12   indicate what happens when the Government says we have

13   nothing to give, whether that triggers it.  Off the top of

14   my head I'm not yet inclined to say they have an obligation

15   to disclose when the Government is saying we have nothing to

16   disclose, so.

17          MR. NOTHSTEIN:  Yes, Your Honor.

18          THE COURT:  Okay.  Any other issues then that have

19   been presented to the Court that I haven't addressed?

20          MALE SPEAKER:  Your Honor, one -- go ahead,

21   Carlos, go ahead.

22          MR. GARCIA:  Briefly, Your Honor, and in spirit of

23   the Court trying to make sure that things go smoothly, as

24   smoothly as possible, we've indicated to the Government of

25   our need or of our intent, not only of myself but other

1  counsel, in having agents for the Government that are --

2  that have relevant information be called to testify.  And

3  the Government has indicated -- based our communication it

4  appears that they're of the position that, you know, once

5  they call them, if they're going to call them to testify,

6  then they're going to be released and it's our obligation to

7  then comply with the *Twohey* regs.  And we're willing to do

8  and go through the hoops.

9       But as the Court is well aware, as trials normally

10  go in our division, the Government has always been more than

11  willing to have agents available to testify that have facts

12  that are specific to a particular matter.  But I just want

13  to get some clarification on the record from the Government

14  if the Government is still in the position that, you know,

15  the *Twohey* regs need to be complied with on their own

16  witnesses that they're going to call.  And so at a minimum

17  we want to get them on the record to state their position.

18  That's all I have, Judge.

19       THE COURT:  All right.  Mr. Nothstein.

20       MR. NOTHSTEIN:  Your Honor, some of the witnesses

21  that were noticed are not witnesses that we intend to call.

22  So those witnesses for certain --

23       THE COURT:  Listen to what Mr. Garcia said.

24  Mr. Garcia said those Government witnesses who are agents

25  that the Government does intend to call.  Those are the ones

1    he's addressing right now.

2           MR. NOTHSTEIN:  We do, Your Honor, we do -- it is

3    our position that the defense still has to comply with the

4    *Twohey* regulation.  And in part, Your Honor, that is because

5    it's about the scope of the questioning.  So obviously we

6    put on a witness that would need to be cross-examined about

7    his direct testimony or his direct examination testimony.

8    But we believe that Mr. Garcia wants to call some of these

9    witnesses for other purposes and to go into issues that are

10   not relevant at trial and so things that we are not putting

11   them on for essentially.  So we do -- it is our position

12   they have to comply with *Twohey* regulations.

13          THE COURT:  Well, one thing is that I will make

14   the determination about what is relevant at trial, not the

15   Government.  And then the other part of that goes to the

16   manner in which the Court conducts these proceedings.  My

17   practice has always been -- I guess this is a good time for

18   counsel to be sort of reminded of that.  My practice has

19   always been that when the Government presents a witness,

20   then the defense cross-examines.

21          I allow defense counsel at that time to go beyond

22   the direct examination because I have found over the course

23   of my time that it saves money as opposed to requiring the

24   defense to limit themselves to cross-examination on issues

25   brought up on direct, or the ones that flow from that, and

1   then having to recall that witness later on in the

2   case-in-chief.  Now, they can choose to do so but if they

3   want to go beyond the scope of direct examination, again,

4   provided I determine that it is relevant, I allow them to do

5   that.  So in that regard --

6              THE CLERK:  Judge, I'm sorry, Mr. Pena got

7   offline.

8              THE COURT:  Oh, we lost Mr. Pena.

9              THE CLERK:  He's about to be back.

10             THE COURT:  Okay, sorry.

11         (Pause)

12             MALE SPEAKER:  He's back on.

13             THE COURT:  I'm lost -- we lost you briefly, I'm

14  not sure what you heard, but what I was explaining,

15  Mr. Pena, is my practice of allowing defense counsel to go

16  beyond direct examination after the Government completes

17  their direct examination and for cross-examination purposes,

18  that I allow defense counsel to go beyond the scope of

19  direct because I found that that saves time and that way

20  rather than having to then move on to another witness and

21  then for a defendant to have to recall that particular

22  witness in their case-in-chief, which I found always ends up

23  being much longer than if we just proceeded.

24             So even though, Mr. Garcia, you may be saying that

25  you would be releasing them after you have completed your

1  examination, I do have control of the courtroom and so keep

2  that in mind as you work through these issues.  At this

3  point in time I am not saying that defense counsel does not

4  have to comply with the *Twohey* requirements.  But I am

5  saying that for purposes of how we proceed at trial that I

6  will give counsel an opportunity to do their full

7  examination after the Government completes its direct

8  examination.

9         Now, they can choose to do only limited cross to

10  what was brought up in direct and recall that witness in

11  their case-in-chief but I will not obligate them to do it

12  that way.

13         MR. NOTHSTEIN:  Yes, Your Honor.  And I would just

14  note for the Court, the six witnesses that Mr. Garcia has

15  noticed up that he would like to examine, he -- only one of

16  them is likely trial witness.

17         THE COURT:  Okay.  So anything else on that issue,

18  Mr. Garcia?

19         MR. GARCIA:  No, Your Honor.  We'll file the

20  appropriate paperwork at the time of our filing for the --

21  any motion if it is filed beforehand, Judge.  Thank you.

22         THE COURT:  Okay.  Then do we have any other

23  issues that anybody wants to address?

24         MR. VEGA:  Judge, we have some agents that are not

25  on the Government's witness list but they did interview

1  Mr. Danny Garcia and also the deceased, Mr. Lopez.  The

2  Government's going to require us to go through the full

3  *Twohey* regs also.  I mean, they are fact witnesses.  We're

4  not going to ask anything beyond the scope of this case but

5  yet they're still requiring us to go through all these

6  requirements.  I believe in this district, Judge, we tend to

7  follow the due process rules.  They're our witnesses, the

8  Government should make them available to us if requested.

9          THE COURT:  I would hope due process is

10  everywhere.  But, Mr. Vega, what I'm saying is at this point

11  in time, since the matter wasn't presented to me before

12  today, I don't like to if I don't absolutely have to sort of

13  just to make a ruling off the cuff.  If you -- I'm happy to

14  address that if you -- and it can be done much earlier than

15  the pretrial motion deadline I gave, and I'm happy to

16  address that.

17          But I would prefer that you file something before

18  the Court so that I can then give it due consideration.  And

19  then I can always schedule a hearing earlier if I need a

20  hearing earlier.  But you also know that I often will rule

21  on the motions as they are presented to the Court.  So if --

22  I'll say this.  If any counsel, and this is Government or

23  defense, has any issue that needs my attention, as soon as

24  you know you have an issue bring it to the Court's

25  attention.  It would be better than waiting until the

1   deadline for motions to file everything at that time,

2   especially if it will help you prepare towards trial.  And

3   then if a motion is filed by whether it's Government or

4   defense, I will institute a ten-day response time.

5           So I will wait at least ten days to get a

6   response.  If I get no response then I will rule on the

7   motion if I think I can on the motion itself.  If I think I

8   need to have a hearing, then I'll schedule a hearing.  But

9   that'll give you an opportunity to file these matters well

10  before the deadline if you want the Court's attention before

11  then.

12          And certainly it sounds to me, Mr. Vega, like this

13  may be one of those if you can't work out something with the

14  Government.

15          MR. VEGA:  Yes, Your Honor.

16          THE COURT:  Okay.

17          MR. VEGA:  That's all we have on that, Judge.

18          THE COURT:  All right.  Any -- let me make sure

19  that I didn't miss anything here.  If counsel thinks I have,

20  I'm happy to hear it now.

21          MR. NOTHSTEIN:  Nothing from the Government, Your

22  Honor.  Thank you.

23          MR. PENA:  Nothing from Quintanilla, Your Honor.

24          MR. GARCIA:  Nothing on behalf of Mr. Cuellar,

25  Your Honor.  Thank you.

1          THE COURT:  Okay.

2          MR. VEGA:  Judge, we have nothing else on behalf

3     of Mr. Danny Garcia.

4          THE COURT:  Okay.  All right.  Then I think that

5     does take care of everything.  The one other thing that I'll

6     say that we'll address when we have that pretrial that is

7     scheduled already, again, hopefully at that time things are

8     much better as to the safety protocols.  But one of the

9     things at that point in time that I will do with counsel is,

10    and part of the reason why I want to have this in person, is

11    that if we have to still have some safety measures then I'll

12    sort of walk you through that so that you have a good sense

13    of what you can expect for the actual trial itself.  All

14    right.

15         MR. VEGA:  Judge, I'm sorry to interrupt, but

16    usually you have us -- do we have to file a written motion

17    to allow us to bring computers into your courtroom?

18         THE COURT:  No.  You may do so for trial purposes.

19    And that's certainly something that I think each one of you

20    needs to start thinking about because, again, I expect that

21    this being a document-driven case, that you make sure that

22    if you are working with our monitors, the projector, all of

23    that, that you have IT people that you know will be able to

24    help you make sure that this is set up.

25         We have our IT people and they will be happy to

1  meet with you at some point in time before the trial to make

2  sure that what you have is compatible with what we have.  I

3  get very impatient in a trial if we're wasting too much time

4  trying to get exhibits up on screens.  And the one thing

5  you'll learn from me for some of you have tried cases in

6  front of me, others have not, but the one thing you'll learn

7  is that during the trial I hate to waste the jury's time or

8  mine for that matter or yours.

9          I mean, I don't like to waste anybody's time.  So

10  those issues should definitely be addressed beforehand.

11          All right.  If there's nothing else at this time

12  then you may each be excused.  And thank you each for your

13  attention to these matters.

14      (Proceedings adjourned at 3:58 p.m.)

15                          *  *  *  *  *

16          *I certify that the foregoing is a correct*

17  *transcript to the best of my ability due to the condition of*

18  *the electronic sound recording of the ZOOM/telephonic*

19  *proceedings in the above-entitled matter.*

20  */S/ MARY D. HENRY*

21  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

22  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

23  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

24  *JTT TRANSCRIPT #63818*

25  *DATE FILED:  APRIL 24, 2021*