## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 7:19-cr-522-S1-4 |
| | § | |
| DANIEL J. GARCIA | § | |

### DEFENDANT'S MOTION TO DISMISS INDICTMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DANIEL J. GARCIA, Defendant, by and through his undersigned counsel, and respectfully moves to dismiss Counts 1-7 and 11 of the superseding indictment (D.E. 30 at 19-20) as to him for the following reasons:

### BACKGROUND

**Count 1**

Count 1 alleges "Conspiracy to Commit Honest Services Wire Fraud." D.E. 30 at 1. Specifically, it alleges that the defendants conspired "to deprive the City of Weslaco, the Weslaco City Commission, and the citizens of Weslaco of their right to the honest services of JOHN F. CUELLAR and TAFOLLA through bribery, in violation of 18 U.S.C. § 1343 and 1346." *Id.* at ¶ 23. It does not specify under which statute bribery is defined or whether it is a federal or state statute.

Moreover, it arguably alleges two distinct conspiracies: one to bribe John Cuellar, and another to bribe Tafolla. *See* D.E. 30 at ¶ 23. This count alleges that Mr. Garcia helped pay a bribe to Cuellar, but it is clear that Mr. Garcia had nothing to do with the alleged bribe to Tafolla; he is not even alleged to have known about it. *Id.* at 17-19. Confusingly, this Count also lists "Bribe Payments" to other people, such as Leo Lopez (which Mr. Garcia also had nothing to do with),

implying an additional bribery conspiracy, although Lopez was not a public official and therefore could not be "bribed." *Id.* at 2, 15-16.

**Counts 2-7**

Counts 2-7 allege substantive "Honest Services Wire Fraud." *Id.* at 19. Here, the indictment alleges that the defendants "devised and intended to devise a schedule and artifice to defraud the City of Weslaco, the Weslaco City Commission, and the citizens of Weslaco of their intangible right to the honest services of JOHN. F. CUELLAR and TAFOLLA through bribery[] …." *Id.* at ¶ 81.  Again, it does not specify under which statute bribery is defined or whether it is a federal or state statute. Furthermore, these counts allege that "the defendants[] … transmitted and caused to be transmitted … the following writings, signs, signals, pictures and sounds[] …." *Id.* The indictment then lists generally six emails in six counts that were allegedly sent by people other than Mr. Garcia or any of the other defendants. *Id.*

**Count 11**

Count 11 alleges "Conspiracy to Launder Monetary Instruments." *Id.* at 22. Specifically, it alleges that the defendants conspired to violate "Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit: to knowingly conduct and attempt to conduct a financial transaction which in fact involved the proceeds of specified unlawful activity, that is, bribery of a public official, knowing that the transaction was designed in whole or in part to promote specified unlawful activity and conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity." *Id.* at  ¶ 89. "[T]he term 'proceeds' means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). Title 18, United States Code,

Section 1956(a)(1)(B)(i), which is referenced in the count, refers to transactions intended "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]" 18 U.S.C. § 1956(a)(1)(B)(i). Title 18, United States Code, Section 1956(a)(1)(A)(i), which is not referenced in the count, refers to transactions conducted "with the intent to promote the carrying on of specified unlawful activity[.]" 18 U.S.C. § 1956(a)(1)(A)(i). Even though it does not reference subsection (a)(1)(A)(i), this count alleges both promotion (subsection (a)(1)(A)(i)) and concealment (subsection (a)(1)(B)(i)).

Moreover, to the extent it references prior paragraphs of the indictment, the indictment seems to allege that Mr. Garcia paid bribes to John Cuellar through his IOLTA account on behalf of Mr. Lopez. *See* D.E. 30 at 17-18. The indictment does not specifically allege any financial transaction conducted after the alleged bribe proceeds were received by Mr. Cuellar.

## AUTHORITY

### A. An indictment must give adequate notice of the charges.

Generally, Rule 7(c)(1) of the Federal Rules of Civil Procedure requires an indictment to provide "a plain, concise and definite written statement of the essential facts constituting the offense charged." *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993). In *Yefsky*, the court held that the indictment was defective in that it did not provide the defendant with adequate notice of the charge (conspiracy to commit mail fraud) against him. *Id.* at 993 ("Where guilt depends so crucially upon...a specific identification of fact...cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.").

Indictments under the broad language of conspiracy statutes must be scrutinized. *Dennis v. United States*, 384 U.S. 855 (1966). A charge in an indictment is valid only when it "fully, directly,

and expressly, without any uncertainty, or ambiguity," sets forth the charged offense. *United States v. Ramon*, 666 F.2d 469, 474 (11th Cir. 1982) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The court determines the sufficiency of the indictment by examining it on its face. *See U.S. v. Conlon*, 628 F.2d 150, 155-56 (D.C. Cir. 1980), *cert. denied*, 454 U.S. 1149 (1982). The indictment must, at a minimum, "first, contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and, second, enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. U.S.*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907 (1974) (citations omitted); *see also Russell v. U.S.,* 369 U.S. 749, 763-64, 82 S.Ct. 1038, 1047 (1962).

"Two corollary purposes of an indictment are: (1) to ensure that the defendants are being prosecuted on the basis of the facts presented to the grand jury, and (2) to allow the court to determine the sufficiency of the indictment." *U.S. v. Buckley,* 689 F.2d 893, 896 (9th Cir. 1982), *cert. denied,* 103 S.Ct. 1778 (1983), *appeal after remand,* 793 F.2d 1079 (9th Cir. 1986). Additionally, an indictment must sufficiently allege the charges "to enable the defendant to adequately prepare his defense." *Kreck v. Spalding*, 721 F.2d 1229, 1232 (9th Cir. 1983).

**B. An element of wire fraud is that a defendant sent or caused to be sent a communication (in this case, e-mail) and, in this case, that the scheme allegedly involve bribery under federal or state law.**

In its pattern jury instructions, the Fifth Circuit lays out the following elements of wire fraud:

*First*: That the defendant knowingly devised or intended to devise any scheme to defraud, that is _____ (*describe scheme from the indictment*);

*Second*: That the scheme to defraud employed false material representations [false material pretenses] [false material promises];

*Third*: That the defendant transmitted [caused to be transmitted] by way of wire [radio] [television] communications, in interstate [foreign] commerce, any writing [sign] [signal] [picture] [sound] for the purpose of executing such scheme; and

*Fourth*: That the defendant acted with a specific intent to defraud.

A "scheme to defraud" means any plan, pattern, or course of action intended to deprive another of money or property or bring about some financial gain to the person engaged in the scheme. [It can also involve any scheme to deprive an employer [shareholders] [citizens] [government agency] of the intangible right to honest services through soliciting or accepting bribes or kickbacks.]

[Define "bribery" pursuant to 18 U.S.C. §§ 201(b) or 665(a)(2) or state law; define "kickback" pursuant to 41 U.S.C. § 52(2) or state law.]

Fifth Circuit Crim. Pattern Jury Instructions (2019).

**C. A count is duplicitous if it charges two offenses in one count.**

"'An indictment may be duplicitous if it joins in a single count two or more distinct offenses.'" *United States v. Baytank (Hous.), Inc.,* 934 F.2d 599, 608 (5th Cir. 1991), *citing United States v. Robin*, 693 F.2d 376, 378 (5th Cir. 1982)). "`[T]he test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not.'" *United States v. Tucker*, 345 F.3d 320, 337 (5th Cir. 2003), *quoting United States v. Reedy*, 304 F.3d 358, 363 (5th Cir. 2002).

**D. Money laundering, in the context of a bribe, would require "laundering" the proceeds of the bribe after it is received, rather than the act of paying the bribe itself.**

"[T]he term 'proceeds' means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). In the context of a bribe, the "proceeds" of the bribe would be the money received by the person being bribed after it has been received. Before this person receives the bribe money, the money is not yet "proceeds," because it has not yet been received by the person being bribed. Therefore, any "laundering" of the bribe money must necessarily occur *after* the bribe has been received. Otherwise, the very act of paying or accepting a bribe would constitute money laundering. To analogize to drug trafficking, the proceeds of drug trafficking is the money received for the sale of narcotics. If the drug trafficker then "launders" that money within the definition of the statute, then he has also committed money laundering. The payment itself for the drugs is not money laundering; otherwise every payment for narcotics would automatically also constitute money laundering. Similarly, the payment of a bribe does not in itself also constitute money laundering, which would require an additional financial transaction with the proceeds of the bribe after they have been received.

## ARGUMENT

## Count 1

### 1. Count 1 is duplicitous, charging two conspiracies in one.

Although it is a single count, Count 1 actually alleges two distinct conspiracies: one to bribe John Cuellar, and another to bribe Tafolla. *See* D.E. 30 at ¶ 23. This count alleges that Mr. Garcia helped pay a bribe to Cuellar, but it is clear that Mr. Garcia had nothing to do with the alleged bribe to Tafolla; he is not even alleged to have known about it. *Id.* at 17-19. Confusingly, this Count also lists "Bribe Payments" to other people, such as Leo Lopez (which Mr. Garcia also had nothing to do with), implying an additional bribery conspiracy, although Lopez was not a public official and therefore could not be "bribed." *Id.* at 2, 15-16.

This makes Count 1 duplicitous, as it actually contains more than one alleged conspiracy. This risks a non-unanimous verdict, as the government could potentially secure a conviction with some jurors believing the defendant was part of one conspiracy and the rest believing he was part of the other, violating the defendant's right to a unanimous jury verdict.

### 2. Count 1 violates the statute of limitations.

If Count 1 is viewed for what it is, several separate conspiracies, instead of just one, then the one where Mr. Garcia is charged would be the one to make bribe payments to John Cuellar from Mr. Garcia's IOLTA account. However, that would violate the statute of limitations, as those payments occurred in December 2012 to April 2013, more than five years before Mr. Garcia was indicted in April 2019. *See* D.E. 30 at 17-18. Once the object of the alleged conspiracy was achieved, which was allegedly to make these financial transactions, it was over.

The government may argue that the alleged benefit to "Person D" in August 2014 is less than five years before the indictment and thus saves it from the statute of limitations. *See* D.E. 30

at ¶ 77. There are two problems with that argument: First, there seems to be no admissible evidence to support it. Second, whether or not Person D obtained a benefit is beside the point of the alleged conspiracy, which was allegedly to bribe John Cuellar with payments from Mr. Garcia's IOLTA account. That conspiracy would have ended once the bribe payments were made, or at least by the time Mr. Cuellar made the requested vote or took the requested official action in exchange for the bribe. If there was an alleged agreement to help get Person D a job, that would be separate from the conspiracy charged in Count 1. Moreover, it would not be illegal, much less honest services fraud, to simply "help" someone get a job, as the indictment alleges.

***3. Furthermore, Count 1 fails to specifically allege the necessary elements or at least fails to give Mr. Garcia adequate notice of the charge against him.***

One of the elements of wire fraud is "false material representations," but this count does not identify what misrepresentation Mr. Garcia conspired to make, nor how it was material. *See* Fifth Circuit Crim. Pattern Jury Instructions (2019).

Another required element is an interstate wire. *Id.* While this count refers generally to the use of "wire communications in interstate commerce, such as mobile messaging applications, email, and interstate bank transfers," it does not specifically identify any of these. *See* D.E. 30 at ¶ 26(h). The indictment only identifies specific wire communications in separate counts, specifically Counts 2-7, the substantive wire fraud counts. *Id.* at ¶ 81. However, it lists only emails, and none of those emails were sent by any of the defendants. *Id.*

For honest-services fraud, the pattern jury instruction requires the Court to define bribery under either federal or state law, depending on what is alleged in the indictment. *See* Fifth Circuit Crim. Pattern Jury Instructions (2019). However, Count 1 does not specify which bribery statute

it is alleging was violated, not even whether it was a state or federal statute. Therefore, Count 1 does not give the Court enough information to craft the appropriate jury instruction.

Similarly, Count 1 does not give Mr. Garcia sufficient notice of the charges against him. What misrepresentation did he allegedly conspire to make? How would this misrepresentation have been material? What interstate wire did he or the codefendants allegedly conspire to make? Which bribery statute did they allegedly conspire to violate? Count 1 does not supply the answers. Therefore, it should be dismissed.

Alternatively, if the Court denies dismissal, then Mr. Garcia would request that the government at least be ordered to supply the missing information in a bill of particulars. However, this remedy is insufficient, because an indictment should provide the required notice, without the need for a bill of particulars. Moreover, allowing the government to redefine the nature of the charge through a bill of particulars or at trial would permit the government to obtain a conviction on the basis of allegations other than those for which the grand jury found probable cause, potentially leading to a fatal variance and violating Mr. Garcia's Fifth Amendment right to be tried solely on the basis of the indictment rendered by the grand jury.

### Counts 2-7

*4. Counts 2-7 also fail to give adequate notice.*

The substantive wire fraud counts suffer from the same deficiencies as Count 1, the conspiracy count. For instance, Counts 2-7 do not identify the bribery statute invoked. *See* D.E. 30 at ¶ 81. Nor do they even allege the element of "false material misrepresentations," much less specify what those alleged misrepresentations were. *Id.* Again, the indictment fails to provide the required notice.

While these counts do list six wire communications, specifically e-mails, none of those e-mails was sent by any of the defendants. *Id.* How did Mr. Garcia allegedly cause those e-mails to be sent? The defense still does not know. Again, the required notice is absent. (If the Court denies dismissal, Mr. Garcia would alternatively request a bill of particulars with the requested information, but this would be insufficient for the reasons stated above.)

*5. Counts 2-7 are deficient in that Mr. Garcia did not cause any of the listed e-mails to be sent.*

Or is the government trying to make Mr. Garcia liable for e-mails that he had no role in causing to be sent? As explained above, the third element of wire fraud that the government must allege and prove is "[t]hat ***the defendant*** transmitted [caused to be transmitted] by way of wire [radio] [television] communications, in interstate [foreign] commerce, any writing [sign] [signal] [picture] [sound] for the purpose of executing such scheme[.]" Fifth Circuit Crim. Pattern Jury Instructions (2019) (emphasis added). Notably, the instruction does not read that someone other than the defendant transmitted or caused to be transmitted the wire communication; it reads "the defendant." *Id.* Counts 2-7 clearly show that none of the defendants sent any of the listed e-mails. Unless the government can show that they caused any of those e-mails to be sent, and with the purpose of executing the alleged scheme, then the government cannot obtain a valid conviction on any of these counts as to any of the defendants, including Mr. Garcia.

## Count 11

*6. Counts 11 fails to give sufficient notice.*

Count 11, the conspiracy to commit money laundering, does not specify any information about what financial transaction Mr. Garcia allegedly conspired to commit, which bribery statute is being invoked, whom was to be bribed, etc. In itself, it fails to give the required notice, and

again, although a bill of particulars would be requested in the alternative, it would be an insufficient remedy.

## *7. Count 11 is legally insufficient: Payment of a bribe does not in itself constitute money laundering.*

Moreover, to the extent it references prior paragraphs of the indictment, the indictment seems to allege that Mr. Garcia paid bribes to John Cuellar through his IOLTA account on behalf of Mr. Lopez. *See* D.E. 30 at 17-18. If true, this may constitute the offense of bribery (for which Mr. Garcia is not charged), but it does not also constitute money laundering or a conspiracy to commit money laundering. Assuming, for the sake of argument, that the allegations were true, the money in Mr. Garcia's IOLTA account would not have been "proceeds" of specified unlawful activity when it was sitting in his account, or at any time before it was received by John Cuellar. Therefore, it would be impossible to "launder" those funds until after they were received by John Cuellar, as they would not yet be "proceeds." Once they were received by John Cuellar, they could then be "proceeds," and if Mr. Garcia were to conspire to "launder" those "proceeds" after Mr. Cuellar received them, then he could be liable for conspiring to commit money laundering. However, the government cannot use the alleged act of paying a bribe as the money laundering transaction, as well. Otherwise, every act of paying a bribe would automatically constitute money laundering. Obviously, any payment of a bribe would necessarily constitute "promotion" of the bribe and some degree of concealment, but that does not make it money laundering. To the extent Count 11 relies on this theory, it is legally and fatally deficient, as what it alleges does not constitute money laundering or a conspiracy to commit money laundering.

*8. Furthermore, Count 11 is duplicitous in that it charges two offenses in one:*

It cites 18 U.S.C. § 1956(a)(1)(B)(i), a conspiracy to "conceal" proceeds, but it also alleges a conspiracy to "promote" unlawful activity, which is a separate offense listed in 18 U.S.C. § 1956(a)(1)(A)(i), although it does not cite that statute. Again, the main danger of such duplicity is that it increases the risk of a conviction on a non-unanimous verdict, violating Mr. Garcia's right to a unanimous jury verdict, by allowing conviction of a conspiracy charge where some jurors may believe that the Defendant conspired to commit one offense, while others may believe he conspired to commit another, without all of them agreeing on whether on which one he allegedly conspired to commit. More specifically, it would allow a conviction if some jurors believed he meant to "promote," while others believed he meant to "conceal," without all twelve agreeing unanimously.

*9. Count 11 violates the statute of limitations.*

To the extent that Count 11 charges Mr. Garcia with conspiring to launder money by making bribe payments from his IOLTA account, it violates the statute of limitations, as those payments occurred in December 2012 to April 2013, more than five years before Mr. Garcia was indicted in April 2019. *See* D.E. 30 at 17-18. Once the object of the alleged conspiracy was achieved, which was allegedly to make these financial transactions, it was over.

The government may argue that the alleged benefit to "Person D" in August 2014 is less than five years before the indictment and thus saves it from the statute of limitations. *See* D.E. 30 at ¶ 77. There are two problems with that argument: First, there seems to be no admissible evidence to support it. Second, whether or not Person D obtained a benefit is beside the point of the alleged conspiracy, which was allegedly to conduct financial transactions in 2013. If there was an alleged "conspiracy" to get Person D a job, that would be a separate conspiracy from the one charged in Count 11.

## CONCLUSION

Accordingly, Mr. Garcia respectfully requests that the indictment against him be dismissed for the foregoing reasons. If the Court denies dismissal, then he would alternatively ask that the government be ordered to provide a bill of particulars giving the missing notice, as explained above. However, as also explained above, this is an insufficient remedy, as it may give rise to a variance between the indictment as returned by the grand jury and the theory of conviction at trial. Moreover, several counts are duplicitous or otherwise legally flawed and cannot be fixed by a bill of particulars. For example, Count 11 rests on the flawed legal premise that the mere payment of a bribe constitute laundering of the proceeds of that bribe payment. Therefore, all counts of the indictment against Mr. Garcia should be dismissed.

Respectfully submitted,

*s/Christopher Sully*
CHRISTOPHER SULLY
Attorney-in-Charge
Counsel for Daniel Garcia
Southern District of Texas 1119552
Texas State Bar No. 24072377
LAW OFFICE OF CHRIS SULLY
5804 N. 23rd St.
McAllen, TX 78504
Tel.: (956) 413-7271
Fax: (888) 990-1525
csully@sullylaw.com

## CERTIFICATE OF CONSULTATION

The government is opposed to this motion.

*s/Christopher Sully*
CHRISTOPHER SULLY

## CERTIFICATE OF SERVICE

On June 21, 2021, this motion was served on all counsel of record via ECF.

*s/Christopher Sully*
CHRISTOPHER SULLY
